IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| SUSAN LYNN RICHARDS, | ) | |
| | ) | |
| Plaintiff | ) | Civil No. 06-6075-PK |
| | ) | |
| v. | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| MICHAEL J. ASTRUE,[1] | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

BRENDA S. MOSELEY
320 Central Avenue, Suite 422
Coos Bay, OR 97420

        Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

RICHARD M. RODRIGUEZ
Special Assistant U.S. Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

        Attorneys for Defendant

_____

        [1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security.
He is substituted as the defendant in this action pursuant to Fed. R. Civ. P. 25(d)(1) and 20
U.S.C. section 405(g).

PAPAK, Magistrate Judge:

Plaintiff Susan Richards seeks judicial review of the Social Security Commissioner's final decision denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). For the reasons below, I recommend the case be remanded for further proceedings.

## PROCEDURAL BACKGROUND

Born in 1980, Richards completed a general equivalency degree. Tr. 79, 550.[2] Between 1996 and 2002 Richards worked as a store clerk, dishwasher, customer service representative, optician, and receptionist. Tr. 74, 120.

Richards applied for DIB and SSI on January 27, 2003, alleging disability since March 26, 2002, due to systemic lupus erythematosus, arthritis of the knees, migraines, and carpal tunnel syndrome. Tr. 73.[3] Her applications were denied initially and upon reconsideration. Tr. 48-50, 53-62. After a December 2004 hearing, an Administrative Law Judge ("ALJ") found Richards could perform work in the national economy. Tr. 21. The Appeals Council denied review on February 1, 2006, making the ALJ's decision final. Tr. 8-10. Richards seeks review of this finding.

///

---

[2] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on August 3, 2006 (Docket #8).

[3] The record does not contain Richards' DIB application, but indicates the presence of the application via citation to her earnings statements. Tr. 1, citing tr. 64.

## MEDICAL BACKGROUND

Richards received a systemic lupus erythematosus ("lupus") diagnosis in 1997 at age seventeen. Tr. 167, 170. Diagnosis was based upon clinical examination and confirmed by antibody testing. *Id.* Lupus is a chronic autoimmune inflammatory disease which can affect joints, kidneys, blood cells, the heart, and lungs. Complications may include renal failure, inflamation of the lungs (pleurisy), and inflamation of the tissue surrounding the heart (pericardial effusion). Lupus may also effect the central nervous system, causing headaches, dizziness, memory problems, behavior changes, and seizures. *See* "Lupus: Complications," *available at* http//www.mayoclinic.com/health/lupus/DS00115/DSECTION=7, last visited March 26, 2007. Richards also carries diagnoses of dysthymia, an adjustment disorder, and a personality disorder. Tr. 286, 295, 300.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential  process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. §§ 404.1520(a), 416.920(a), *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Richards challenges the ALJ's evaluation of the evidence and his conclusion at step five in the sequential proceedings.

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month duration requirement. 20 C.F.R. §§  404.1509, 404.1520(a)(4)(ii), 416.909, 416.(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. *Id.* At step three, the ALJ determines if the severe impairment

meets or equals a "listed" impairment in the regulations.  20 C.F.R. §§ 404.1520(a)(4)(iii),

416.920(a)(4)(iii).  If the impairment is determined to meet or equal a listed impairment, the

claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other

relevant evidence in assessing the claimant's residual functional capacity (RFC).  The claimant's

RFC is an assessment of work-related activities the claimant may still perform on a regular and

continuing basis, despite limitations imposed by her impairments. 20 C.F.R. §§ 404.1520(e),

416.920(e), Social Security Ruling ("SSR") 96-8p (*available at* 1996 WL 374180). The ALJ

uses this information to determine if the claimant can perform past relevant work at step four.  20

C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant cannot perform past relevant

work, the ALJ must determine if the claimant can perform other work in the national economy at

step five.  *Yuckert*, 482 U.S. at 146 n.5; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20

C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at

1098.  If analysis reaches the fifth step the burden shifts to the Commissioner to show that jobs

exist in the national economy in the claimant's residual functional capacity.  *Id.*  If the

Commissioner meets this burden the claimant is not disabled.  20 C.F.R. §§  404.1520(g),

404.1566, 416.920(g), 416.966.

## THE ALJ'S FINDINGS

The ALJ found that Richards' "allegations regarding her limitations are not totally

credible."  Tr. 25.

4 - FINDINGS AND RECOMMENDATION

At step two in the sequential proceedings, the ALJ found Richards' ability to work limited by her lupus and rheumatoid arthritis. Tr. 25. The ALJ found her alleged depression and personality disorder non-severe. Tr. 20. The ALJ evaluated Richards' RFC:

> The claimant has the residual functional capacity to do sedentary
> exertional level work with the ability to do only occasionally [sic]
> lifting up to 10 pounds, frequent lifting less than 10 pounds, sitting
> for 6 hours, standing or walking up to 2 hours and have the option
> to sit or stand at will. Ms. Richards is to do no climbing of
> ladders, ropes or scaffolds and only occasionally perform work
> that would require balance.

Tr. 25. The ALJ found that this RFC allowed Richards to perform "a significant range of sedentary work." *Id.*

At step four, the ALJ found that Richards' sporadic work history did not constitute past relevant work. *Id.* At step five, the ALJ found that Richards could perform significant work in the national economy as an order clerk, charge account clerk, or telephone clerk. Tr. 25-26. Accordingly, the ALJ determined that Richards was not disabled under the Act at any time through the date of his decision. Tr. 26.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh "both the evidence that supports and detracts" from the ALJ's conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The reviewing court "may not substitute its judgment for that of the Commissioner." *Edlund v.*

5 - FINDINGS AND RECOMMENDATION

*Massanari*, 253 F.3d 1152, 1156 (9ᵗʰ Cir. 2001).  When reviewing a credibility finding, the court

must consider whether the Commissioner provided "clear and convincing reasons" for finding a

claimant not credible.  *Reddick v. Chater*, 157 F.3d, 715, 722 (9ᵗʰ Cir. 1998).  Variable

interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational

reading of the record.  *Magallanes*, 881 F.2d at 750; *see* also *Batson*, 359 F.3d at 1193.

## DISCUSSION

Richards contends the ALJ improperly evaluated her credibility and the medical evidence

supportive of an impairment that could cause Richards' symptoms and pain, including her

symptom testimony regarding chest, abdominal, and pelvic pain potentially stemming from her

lupus.  Richards further contends that the ALJ's improper evaluation of credibility and medical

evidence resulted in an erroneous RFC and error at step five.  Richards does not challenge the

ALJ's findings regarding her mental limitations.

## I.  Richards' Credibility

The ALJ found Richards' allegations regarding her limitations "not totally credible for the

reasons set forth in the body of this decision."  Tr. 25.  The ALJ's decision offers no distinct

credibility finding or explanatory language.  His only clearly identifiable credibility discussion

states, "after a review of the claimant's medical record noting the doctor's comments regarding

the claimant's impairments and her alleged limited activities of daily living, noted at the hearing,

one must recognize there is a definite credibility gap."  Tr. 22.  The ALJ did not indicate other

reasons supporting this "gap."   The ALJ subsequently states,

The claimant has a severe impairment that can be reasonably

6 - FINDINGS AND RECOMMENDATION

> expected to produce pain causing functional limitations on work-
> related activities but the complaints suggest the objective medical
> evidence can show a greater impairment severity than is supported
> by the medical record.

Tr. 22.  The exact meaning of this statement is unclear, but the ALJ appears to conclude the

medical record does not support the pain and symptoms Richards alleges.

### A.    Credibility Analysis

The ALJ must evaluate a claimant's credibility in order to properly consider the

claimant's testimony regarding alleged symptoms and pain.  Symptom testimony is evaluated

under the same standards as excess pain testimony.  *Swenson v. Sullivan*, 876 F.2d 683, 687-88

(9th Cir. 1989).

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court

to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."  *Orteza v.

Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).  Once a claimant shows an underlying impairment, the

ALJ may not, however, make a negative credibility finding "solely because" the claimant's

symptom testimony "is not substantiated affirmatively by objective medical evidence."  *Robbins

v. Social Security Administration*, 466 F.3d 880, 883 (9th Cir. 2006).  In making credibility

findings, the ALJ may consider objective medical evidence and the claimant's treatment history,

including any failure to seek treatment, as well as the claimant's daily activities, work record,

and observations of physicians and third parties with personal knowledge of the claimant's

functional limitations.  *Smolen*, 80 F.3d at 1284.  Additionally, the ALJ may employ ordinary

techniques of credibility evaluation, such as weighing inconsistent statements regarding

symptoms by the claimant.  *Id*.

### B.    Discussion

The Commissioner contends the ALJ made an adequate credibility decision because he "noted evidence of noncompliance."  Defendant's Br. 6.  The Commissioner also asserts that the ALJ adequately cited Richards' "overreaction to stimuli" in finding that she exaggerated her symptoms.  Def. Br. 7.  Finally, the Commissioner contends the ALJ's decision is supported by the "paucity of medical evidence" supporting the degree of limitation Richards alleges.  *Id.*

### a.    Evidence of Noncompliance

A claimant may be found not credible if she fails to comply with recommended treatment for her impairment.  *Smolen*, 80 F.3d at 1284.  Here, the ALJ found, "it was noted [Richards] was prescribed Plaquenil, did well when she took the medication, but it was noted she was non-compliant."  Tr. 21.  The record is inconsistent regarding Richards' alleged noncompliance.  Her initial treating physicians, Drs. Hudson and Birskovich, suggested Richards was inconsistent in using her Plaquenil in 1998 at age seventeen.  Tr. 167.  However, in 2001, Dr. Richardson, also a treating physician, indicated that discontinuation of Plaquenil was appropriate at that time.  Tr. 234.  The ALJ's reference to Richards' non-compliance in 1998 at age seventeen refers to an episode seven years before the date of his 2005 decision.  This reference does not establish noncompliance throughout the period in question, nor does it support a negative credibility determination.

### b.    Symptom Exaggeration

The Commissioner suggests the ALJ found that Richards "exaggerated" her symptoms.

8 - FINDINGS AND RECOMMENDATION

Def. Br. 7.  In support of this argument, the Commissioner cites two episode of record described

by the ALJ.  In the first, the ALJ noted:

> The claimant has alleged that arthritis in her knees limits her
> ability to stand or walk for periods of time and the medical records
> indicate in August of 2003 she allegedly suffered a temporary loss
> of the use of her legs.  However, upon examination the doctor
> raised her legs above the bed and they dropped as if they had no
> significant muscle tone.  Subsequently, her doctor suspected the
> cause of her weakness to have a significant psychiatric component
> for later she was observed by nursing personnel to be moving her
> legs while sitting upon the gurney.  A psychiatric consultant was
> then ordered to interview the claimant, but, before she could be
> interviewed Ms. Richards asked to be discharged to her home, said
> she could get along fine there and asked for a wheelchair which
> was prescribed for only one week.

Tr. 21.

        This is not an adequate review of the record pertaining to Richards' arthritis in her knees.

Nor does the ALJ make a finding that this incident supports an inference of exaggeration.

Furthermore, it is illogical to suggest a "psychiatric component" of an alleged impairment

renders a claimant carrying psychiatric diagnoses not credible.  This reasoning for rejecting

Richards' credibility should not be sustained.

        The ALJ subsequently described an episode occurring in July 2004 when Richards

collapsed and lost consciousness while performing kareoke.  Tr.  22.   The relevant records show

indeterminate cause for Richards' loss of consciousness and seizures.   Tr. 198-99, 497-500, 537.

The ALJ, however, states:

> Upon her mother's arrival, it was noted, her mother knew exactly
> what had happened to her.  Ms. Gayle Richards stated that her
> daughter had a similar experience about a year ago and one other

9 - FINDINGS AND RECOMMENDATION

> time prior to that in which the doctors mistakenly thought she was suffering from a seizure disorder. Furthermore, her mother noted this event was due to the claimant's lupus and more importantly exhaustion, for Ms. Susan Richards had been going out several nights in a row and that is just too much for her.

Tr. 22. The ALJ offers no analysis of this event, nor does he connect it to a finding of exaggeration. Furthermore, later in his opinion he rejects the testimony of Gayle Richards, finding that she "has not been entirely credible." Tr. 23.

Also, to the extent this event was intended to support a finding of Richards' credibility it is inconsistent with the medical record, discussed below. Richards correctly notes that lupus may involve the brain and nervous system. Pl. Opening Br. 9. Neuropsychiatric manifestations of lupus may include unexplained seizures. *See* "Lupus: Complications," *available at* http//www.mayoclinic.com/health/lupus/DS00115/DSECTION=7, last visited March 26, 2007. It is illogical to suggest Richards' exhibition of symptoms relating to her established lupus or her alleged psychiatric impairments would instead support a negative credibility finding.

### c. Objective Medical Record

Absent a finding of malingering, if the ALJ rejects a claimant's symptom or excess pain testimony, he must offer "specific, clear and convincing reasons" supporting his rejection. *Smolen*, 80 F.3d at 1281. These reasons may not be based upon medical evidence alone. *Robbins*, 466 F.3d at 883. I do not find the Commissioner's suggestion that the ALJ made a malingering finding persuasive, in light of the "symptom exaggeration" analysis discussed above. Therefore the ALJ should have offered clear and convincing reasons independent of the medical record for rejecting Richards' testimony.

10 - FINDINGS AND RECOMMENDATION

C.        **Credibility Conclusion**

In summary, the ALJ failed to provide clear and convincing reasons for rejecting Richards' symptom testimony.  I again note that symptom testimony is evaluated under the same standards as excess pain testimony.  *Swenson*, 876 F.2d at 687-88.  In this case the ALJ failed to properly consider Richards' claims regarding shortness of breath, fatigue, concentration difficulties, and extremity swelling.  Evaluation of such testimony requires an adequate, identifiable, credibility finding.  *See id*.

In particular, the ALJ's citation to symptoms associated with lupus and Richards' psychiatric diagnoses in his credibility analysis is illogical.  The ALJ's only clearly identifiable credibility findings, quoted above, refer solely to the medical record.  The ALJ may not base a credibility finding upon the medical evidence alone.  *Robbins*, 466 F.3d at 883.  The ALJ's credibility decision, on the current record, should not be sustained.

## II.  Medical Source Statements

Richards argues the ALJ did not properly consider various clinical manifestations of her lupus in his findings.  Pl. Opening Br. 8-9.   The ALJ found that Richards did not meet or equal the relevant listing for lupus at step three in the sequential proceedings because her condition, "for the reasons detailed below . . . does not approach the severity to be determined presumptively disabling."  Tr. 20. The ALJ's further explanation of the record states

> Ms. Richards has suffered with rheumatoid arthritis and systemic
> lupus erythematosus since 1997 and her manifestations have
> included arthritis of her large joints, pericarditis, pressure in her
> chest, and a loss of consciousness.  Although she has undergone
> multiple exams with laboratory testing, results of most of those

> exams reveal her impairments cause her only minimal limitations.
> She does not suffer from synovitis, she has alleged headaches but
> there is no documentation related to any treatment for headaches,
> Ms. Richards was presribed Plaquenil, did well when she took the
> medication, but it was noted she was non-compliant.  (Exhibit
> 26F\5 & 28F\4).

Tr. 21.  The ALJ subsequently proceeded through step five in the sequential disability analysis

but offered no other detailed discussion of clinical findings from the medical record.

### A.     Standards

Generally, a treating physician is accorded greater weight than an examining physician,

and an examining physician is in turn accorded greater weight than a non-examining or

reviewing physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  If the opinion of a

treating or examining physician is contradicted, then an ALJ need set out specific and legitimate

reasons supported by substantial evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir.

2005).  This evaluation must set out a "detailed and thorough summary of the facts and

conflicting clinical evidence."  *Magallanes*, 881 F.2d at 751.

The ALJ may not construe a selective reading of the record.  *See Howard v. Barnhart*,

341 F.3d 1006, 1012 (9th Cir. 2003).  At step three in the sequential proceedings the ALJ must

"explain adequately his evaluation of alternative tests and the combined effect of impairments."

*Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).  The ALJ must satisfy this burden before

continuing to steps four and five in the sequential analysis.  The ALJ's analysis quoted above

does not satisfy this burden.  Conclusory findings without explanation are not acceptable.  *See id.*

### B.     Analysis

This court will not make detailed findings regarding each and every physician of record. However, particular attention is paid to specialist opinion regarding conditions potentially associated with Richards' lupus.

        **a.**        **Treating and Evaluating Physicians**

The ALJ failed to discuss treating physicians Drs. Birskovich and Hudson, who established Richards' lupus diagnosis and initial treatment in 1997, when Richards was seventeen. Tr. 170, 165-66. The ALJ also omitted discussion of subsequent treating physicians Drs. Richardson and Park. Tr. 226-238, 459-462, 502-08, 511, 519, 521, 526, 531-32, 536-37, 539, 541-43.

Richards additionally sought emergency room treatment between June 2001 and August 2003 for abdominal and pelvic pain, shortness of breath, chest pain, seizures, loss of consciousness, weakness, wrist pain, leg weakness, and depression. Tr. 193-94, 198-99, 203-04, 208, 210-11, 215-18, 248-50, 324-25, 356-57, 397-98. Significantly, these records largely omit reference to lupus, suggesting that Richards failed to inform providers of her condition. The ALJ twice referred to the emergency facility records, but did not consider the records in detail. His discussion focused upon possible psychiatric components of Richards' knee pain and seizures and omitted reference to substantive reports.

The ALJ also failed to discuss specialist opinions by treating rheumatologist Dr. Cassell, treating cardiologist Dr. Van Diss, gastroenterologist Dr. Giss, neurologist Dr. Lockfeld, and examining psychologist Dr. Wahl. These specialists each documented abnormal findings in their respective specialties, summarized briefly below.

13 - FINDINGS AND RECOMMENDATION

### i.    *Cardiologist Dr. Van Diss*

Dr. Van Dis treated Richards between August 2003 and January 2004.  Tr. 404-08, 435-45.  Dr. Van Dis noted that Richards exhibited pericardial effusion, or accumulation of blood around the heart, in September 2003.  Tr. 404-408.  He characterized this as a "persistent large pericardial effusion."  Tr. 436, 438, 446.  Dr. Van Dis noted that swelling improved in January 2004, but emphasized that the condition persisted.  Tr. 435.  The ALJ cited "pericarditis" without reference to Dr. Van Dis' notes, and concluded, "results of most . . .  exams reveal her impairments cause her only minimal limitations."  Tr. 21.  Dr. Van Dis did not comment upon any limitations, minimal or otherwise, in his interpretation of examination and test results.  The ALJ's conclusion of the limitations caused by Richards' pericardial effusion is not supported by the record.

### ii.    *Gastroenterologist Dr. Giss*

Dr. Giss evaluated Richards' gastrointestinal complaints and pain in April 2004.  Tr. 514-16.  He assessed "significant inflamation" of the colon via endoscopy.  Tr. 510.  The ALJ failed to consider this assessment.  This omission is significant in light of Richards' testimony regarding her stomach pain.

///

### iii.    *Neurologist Dr. Lockfeld*

Neurologist Dr. Lockfeld evaluated Richards in July 2004.  Tr. 497-500.  Richards visited Dr. Lockfeld after collapsing and losing consciousness in a nightclub.  Tr. 498.  Dr.

Lockfeld  noted that Richards' clinical history showed memory difficulty, depression, "excessive

worrying," "recent emotional upset," difficulty swallowing, numbness and tingling, headaches,

nausea, and changes in bowel pattern.  *Id.*  Dr. Lockfeld  initially suggested that Richards'

fainting episodes "are either psychogenic or represent narcolepsy."  Tr. 499.  The ALJ did not

consider Dr. Lockfeld's evaluation in assessing Richards' seizures.  Tr. 21.

### iv.    *Evaluating Psychologist Dr. Wahl*

Psychologist Dr. Wahl evaluated Richards in December 2002 and assessed Richards with

an adjustment disorder and a personality disorder.  Tr. 322.  She noted that Richards stated that

her lupus "causes severe mood swings."  Tr. 320.  Dr. Wahl did not assess Richards with a

depressive disorder.  *Id.*  The ALJ did not cite this evaluation in his discussion of Richards'

mental impairments.  Tr. 20.

The ALJ should have considered these specialist opinions in concert with Richards'

lupus.  He has a duty to consider all of a claimant's impairments together.  20 C.F.R. §§

404.1523, 416.923.  Furthermore, his analysis should recognize that the Commissioner

"generally will give more weight to the opinion of a specialist about medical issues related to his

or her area of specialty."  20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5).

*///*

### b.    **Reviewing Physicians**

Finally, I note that Disability Determination Services's (DDS)[4] reviewing physicians Drs.

_____

[4]DDS is a federally-funded state agency that makes eligibility determinations on behalf
and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a)

Jensen and Eder reviewed the medical record and made independent RFC assessments. In January 2003, Dr. Jensen suggested an RFC encompassing light work, with additional limitations in exposure to cold and sunlight due to Richards' lupus and associated Raynaud's disease.[5] Tr. 330.

Dr. Eder performed a similar review in October 2005. Dr. Eder's suggested RFC restricted Richards to light work with no stooping or kneeling, and omitted Dr. Jensen's environmental limitations. Tr. 487-88. Dr. Eder's narrative review of the record omits reference to Richards' Raynaud's disease, associated cold intolerance, and sunlight sensitivity. Tr. 492.

The ALJ cited Dr. Jensen's review of the record, but offered no reason for omitting Dr. Jensen's suggested limitations from Richards' RFC assessment.

An ALJ is not bound by DDS physician findings, but the ALJ may not ignore their findings. 20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2), SSR 96-6p at *1 (*available at* 1996 WL 374186). He must adequately explain weight accorded to reviewing physician opinions and inclusion or omission of suggested limitations. *Id.* Here, the ALJ failed to distinguish between limitations assessed by Drs. Jensen and Eder and omitted suggested environmental limitations without discussion. Tr. 22.

---

and 20 C.F.R. §§ 404.1503, 416.903.

[5]Raynaud's disease is diagnosed after two years or more of Raynaud's phenomena. Raynaud's phenomena are "intermittent attacks of ischemia [decreased blood supply] of the extremities . . . especially the fingers, toes, ears, and nose, caused by exposure to cold or by emotional stimuli. The attacks are characterized by severe blanching of the extremities . . . usually accompanied by numbness, tingling, burning, and often pain. . . . The attacks usually occur secondary to such conditions as . . . systemic lupus erythematosus." Kenneth N. Anderson et al. eds., *Mosby's Medical, Nursing, & Allied Health Dictionary* ( 5th ed. 1998).

### C.    Conclusion: Medical Source Statements

The ALJ failed to discuss Richards' medical records in any detail.  In discussing Richards' arthritis of the knees, the ALJ did not consider clinical evaluation of her arthritis.  Tr. 21.  The ALJ mentioned Richards' pericarditis and pressure in her chest, but did not discuss the clinical significance of these impairments.  Tr. 21.  Finally, while the ALJ mentioned Richards' seizure history, he failed entirely to consider any pertinent clinical medical records.  Tr. 22.

The ALJ failed to detail his analysis of the treating and evaluating physicians of record, offering only the conclusory analysis quoted above.  This court cannot review the ALJ's discussion where none exists.  The ALJ's analysis by omission is insufficient as a matter of law. The ALJ furthermore failed to include all limitations assessed by reviewing physicians without explanation.  The ALJ's evaluation of the medical record in reaching his step three conclusion and subsequently assessing Richards' RFC prior to his step four and step five analysis should not be sustained.

### III.  Duty to Call a Medical Expert

An ALJ may call a medical expert to assist in step three determinations.  20 C.F.R. §§ 404.1527(f)(2)(iii), 416.927(f)(2)(iii).  When ambiguities arise in the medical record, the ALJ has an affirmative duty to call a medical expert.  *Howard*, 341 F.3d at 1014, *see* also *Armstrong v. Commissioner*, 160 F.3d 587, 589 (9th Cir. 1998).  The record establishes that Richards has lupus with associated pericardial effusion.  The effects and potential limitations stemming from these impairments are not evident from the record.  Furthermore the relationship between Richards' chest pain, gastrointestinal pain, possible seizure disorder, loss of consciousness,

emotional disorders, and her lupus is unclear.  The ALJ should have obtained the testimony of a medical expert to ascertain the limitations imposed by Richards' impairments at step three before constructing an RFC assessment and proceeding to steps four and five of the sequential analysis.

## IV.  The Vocational Expert's Testimony

Richards contends the ALJ's questions to the vocational expert failed to account for her fatigue or additional limitations experienced during exacerbations of her lupus.  Pl. Opening Br. 10.  The ALJ's question to the VE encompassed a light RFC with no climbing and occasional balancing.  Tr. 603.  Richards' counsel's questions to the VE cited Richards' swollen hands and predicted two or more absences per month.  Tr. 605-06.

In making a step five finding which includes non-exertional limitations, the ALJ is required to propound a hypothetical to the vocational expert.  *Tackett*, 180 F.3d at 1102.  This hypothetical must be "based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant's limitations."  *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2003).

Because this court does not sustain the ALJ's review of the medical record or his credibility finding, the ALJ's questions to the vocational expert were inadequate.  However, it is not clear from the medical record what further limitations Richards requires.  Further proceedings are necessary to establish Richards' relevant limitations supported by substantial evidence of record.

## REMAND

The ALJ erroneously applied findings of two reviewing physicians and entirely failed to

discuss the treating and evaluating physicians of record.  Disability determinations cannot be made without a complete review of the record.  The record furthermore suggests ambiguities that require resolution by a medical expert.

In these circumstances the record warrants further consideration.  Because it is not clear that the record otherwise supports a finding of disability, crediting Richards' testimony does not automatically establish that Richards would be found disabled.  Upon remand the ALJ must appropriately consider all medical sources addressed above and obtain the testimony of a medical expert to resolve ambiguities regarding effects of Richards' lupus.  The ALJ must then make an appropriate step three determination.  If the ALJ proceeds to steps four and five of the sequential analysis he must make a proper credibility determination and re-assess Richards' RFC in light any limitations established by the record.

## **RECOMMENDATION**

Based on the foregoing, the ALJ's determination that Richards "was not under a disability" should be reversed and remanded  for further proceedings consistent with these findings.

## **SCHEDULING ORDER**

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due April 26, 2007.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.  If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

19 - FINDINGS AND RECOMMENDATION

IT IS SO ORDERED.

Dated this 11th day of April, 2007.


/s/ Paul Papak_____

Paul Papak

United States Magistrate Judge